**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 11-cv-00286-REB

GUILLERMO LUIS TORRES BRODA,

Petitioner,

v.

FRANIA JAZMIN CEJA ABARCA,
a/k/a ANIA ZMIA ABIA,

Respondent,

and concerning the minor child,

G.F.T.C.

---

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER DENYING PETITION FOR RETURN OF CHILD**

---

**Blackburn, J.**

This matter is before me on the **Petition for Return of child To Petitioner Under the Hague Convention on the Civil Aspects of International Child Abduction and the International Child Abduction Remedies Act** [#1][1] filed February 3, 2011. The petition first came on for hearing on March 10, 2011, and the hearing was concluded on March 11, 2011. Both parties were present at the hearing, and both were represented by counsel.

I have judicially noticed all relevant adjudicative facts in the file and record; I have considered the evidence educed during the hearing; and I have considered the

---

[1] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

stipulations offered and approved, arguments advanced and the authorities cited by the parties in their pleadings, papers, and oral arguments. Therefore, I enter the following findings of fact (which are supported by a preponderance of the evidence), conclusions of law, and orders.

In determining the credibility of each witness, I considered all relevant factors, including each witness's means of knowledge, ability to observe, and strength of memory; the relationship each witness has to the other parties in interest; the manner in which each witness might be affected by the outcome of the hearing; and the extent to which each witness was either supported or contradicted by other witnesses and other evidence. I considered all relevant factors shown by the evidence which affected the credibility of each witness who testified.

## I.  FINDINGS OF FACT

1.  The petitioner, Guillermo Luis Torres Broda, and the respondent, Fania Jazmin Ceja Abarca, were married in 2001 in the city of Rosario, State of Santa Fe, Republic of Argentina.

2.  The petitioner is a citizen of the Republic of Argentina.

3.  The respondent is a citizen of Mexico.

4.  The petitioner and the respondent are the parents of the child who is the subject of this case, Guillermina Frania Torres Ceja (the child).

5.  The child was born in Argentina on May 25, 2004.

6.  After the birth of the child, the petitioner, the respondent, and the child resided together in Argentina until August 2, 2007.

7.  On July 20, 2007, the petitioner executed a document authorizing the child to travel, accompanied by the respondent, anywhere in the world and having the right to

return to Argentina and travel abroad any time the respondent considered it to be convenient.  Exhibit 5.

8.  On August 2, 2007, the respondent and the child traveled from Argentina to Mexico.

9.  They were scheduled to return to Argentina on or about September 16, 2007, but they did not return.

10.  On August 17, 2007, the respondent advised the petitioner that she did not plan to return to Argentina with the child, but instead, planned to remain in Mexico with the child.

11.  On October 3, 2007, the petitioner filed a request with the Argentine Ministry of Foreign Affairs Legal Issues Direction seeking relief under the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention" or "Convention").

12.  The petitioner's request was directed properly to corresponding officials in Mexico.

13.  On June 18, 2009, a court in Mexico conducted a hearing on the petitioner's petition for relief under the Hague Convention.  That court is referred to in the record as the First Instance Court of the City of Guaymas, State of Sonora (court of first instance).

14.  Both the petitioner and the respondent were present for the hearing on June 18, 2009.

15.  Both the petitioner and the respondent were represented by counsel at the hearing on June 18, 2009, and neither party has expressed any reservation or complaint about the quality or competence of their legal representation at this proceeding.

16.  Both the petitioner and the respondent were permitted to present testimony

and other evidence at the June 18, 2009, hearing and did present testimony and other evidence at that hearing.

17.   On July 7, 2009, the court of first instance issued a written order resolving the petitioner's petition for relief under the Hague Convention.  Exhibit 9.[2]

18.   An unofficial translation of that order from Spanish to English is included in Exhibit 9.  That translation is reasonably accurate and complete, and neither party has raised any material dispute about the accuracy and completeness of the translation included in Exhibit 9.[3]

19.   In the order of July 7, 2009, the court of first instance denied the petitioner's[4] request for relief under the Hague Convention.

20.   The court of first instance noted correctly in its order that under Article 3 of the Hague Convention, the removal or retention of a child is wrongful if the applicant shows that he has custody rights to the minor child given by the child's state of habitual residence, and that the petitioner was exercising those rights before the removal of the child from her state of habitual residence.  Exhibit 9, p. 4.

21.   The court of first instance found that the petitioner "was exercising factual custody" before the respondent and the child left Argentina.  Exhibit 9, p. 5.

22.   The court of first instance found that the petitioner "consented that the minor be transferred until the mother believes it best to return to her country of origin."  Exhibit

---

[2]  I cite the English translation of the order of July 7, 2009, as shown in Exhibit 9, using the handwritten page numbers shown on that exhibit.

[3]  The translation shown in Exhibit 9 indicates that "Page 20 is missing."  Exhibit 9, p. 6.  I note that the text of the order flows logically and consistently from the page 18, through 19, and to the page numbered 21.  Therefore, I find that the order is not missing a page.  Rather, I find that the page numbered 21 is mis-numbered.

[4]  In its order of July 9, 2009, the court of first instance refers to the petitioner as the "applicant." To ensure clarity in this order, I use the term petitioner in place of the term applicant.

4

9, p. 6.

23. This finding was based on the terms of the travel authorization executed by the petitioner on July 20, 2007. Exhibit 9, pp. 5 - 6.

24. Citing Article 13 of the Hauge Convention, the court of first instance noted that a return of the child under the Hague Convention is not required if it has been shown that the parent requesting return of the child gave "prior consent for the retention or trip." Exhibit 9, p. 6. The court found that "the first requirement of the Hague Convention under Article 3, was not effectuated, that is, that the custody right in relation to the applicant was not broken, since he consented that the minor travel with the mother." Exhibit 9, p. 6. Ultimately, the court of first instance concluded that is "is not allowing the return of the minor child under the Hague Convention in virtue of Article 13 of the convention which states that: 'it is not required to return the minor if there was prior consent for the retention or trip.'" Exhibit 9, p. 6. "In this case, the applicant consented that the minor be transferred until the mother believes it best to return to her country of origin." Exhibit 9, p. 6.

25. On September 24, 2007, the petitioner executed a document while in Argentina revoking his travel authorization of July 20, 2007. Exhibit 5, pp. 2, 10.

26. The respondent was not notified of the September 24, 2007, revocation document when it was executed.

27. The record does not demonstrate when precisely the respondent became aware of the revocation document.

28. The court of first instance took note of the petitioner's contention that he had revoked the travel authorization, but noted that the respondent was not notified of the revocation for some time after it was executed. Exhibit 5, p. 6.

29. After stating in its order its conclusion that relief under the Hague Convention was not appropriate, the court of first instance addressed additional issues, such as whether the child was well adjusted in Mexico, whether a return to Argentina would cause the child emotional instability or otherwise would be tolerable to the child.  Exhibit 5, pp. 6 - 7.  These considerations were addressed by the court of first instance in the context of Mexican law and were not part of the determination of the Hague petition by the court of first instance.

30. The petitioner filed an appeal challenging the July 7, 2009, order of the court of first instance.

31. The Supreme Tribunal of Justice of the State of Sonora resolved the appeal in an opinion issued on March 4, 2011.  Exhibit N.  The Supreme Tribunal of Justice upheld the ruling of the First Instance Court of the City of Guaymas, State of Sonora.

## II.  CONCLUSIONS OF LAW

**Jurisdiction**

32. I have jurisdiction over this case under 42 U.S.C. § 11603(a) (part of ICARA) and under 28 U.S.C. § 1331 (federal question).

**Notice**

33. The petitioner has satisfied the basic pleading and notice requirements of 42 U.S.C. § 11603 (b) and (c).

**The Hague Convention**

34. On October 25, 1980, the ***Hague Convention on the Civil Aspects of International Child Abduction*** ("Hague Convention" or "Convention"), 51 Fed. Reg. 10494 (1986), was ratified and adopted to effect "to protect children internationally from the harmful effect of their wrongful removal or retention and to establish procedures to

ensure their prompt return to their State of habitual residence." ***Hague Convention***, Preamble, 51 Fed. Reg. 10494, 10498 (1986).  The full text of the Convention is codified and published at Appendix B, 51 Fed. Reg. 10494, 10498-502 and can be found at 1988 WL 411501. The United States, the Republic of Argentina, and Mexico each are signatories to the Convention.  The United States implemented the Convention in the ***International Child Abduction Remedies Act*** ("ICARA"), 42 U.S.C. § 11601-11610 (1994).

35.  To promote the goals of the Convention, signatory states have agreed that when a child who is habitually residing in one signatory state is wrongfully removed to another signatory state, the latter shall promptly return the child to the jurisdiction of the former.  ***Hague Convention***, Art. 12, 51 Fed. Reg. 10499.  The Hague Convention is intended to "restore the pre-abduction status quo and to deter parents from crossing borders in search of a more sympathetic court."  ***Friedrich v. Friedrich***, 78 F.3d 1060, 1064 (6th Cir. 1997).  Article 1 of the Convention states that the objective is "to secure the prompt return of children wrongfully removed or retained in any Contracting State and … to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." 51 Fed. Reg. at 10498.  If a child is wrongfully removed, Article 12 provides that the court "shall order the return of the child forthwith." 51 Fed. Reg. at 10499. The intended result is that a final decision on custody be made by the authorities in the country of the child's habitual residence prior to his or her wrongful removal.  The Tenth Circuit summarizes the Convention and ICARA in ***Ohlander v. Larson***, 114 F.3d 1531, 1534 (10th Cir. 1997).

36.  The United States implemented the Convention in the ***International Child Abduction Remedies Act*** ("ICARA"), 42 U.S.C. §§ 11601 - 11611.

37. To obtain relief under the **Hague Convention**, the petitioner must show by a preponderance of the evidence that the child was removed wrongfully from Argentina.

38. The removal or retention of a child is wrongful under the Hague Convention if

> a) it is in breach of rights of custody attributed to a person … either jointly or alone, under the law of the State in which the child was habitually resident immediately before removal or retention; and
>
> b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

**Hague Convention**, Art. 3, 51 Fed. Reg. at 10498.

39. If a petitioner shows that a child was wrongfully removed, Article 12 of the Convention mandates that the child be returned to his or her habitual residence. **Asvesta v. Petroutsas**, 580 F.3d 1000, 1004 (9th Cir. 2009). However, Article 13 of the Convention provides exceptions to this mandate. For example, if the petitioner consented to or subsequently acquiesced in the removal or retention, return of the child is not mandated. **Id**.

40. In the United States, the doctrine of comity is applicable to rulings on Hague petitions by courts in other countries. **Asvesta**, 580 F.3d at 1004; **Diorinou v. Mezitis**, 237 F.3d 133 (2nd Cir. 2001).

> "The extent to which the United States, or any state, honors the judicial decrees of foreign nations is a matter of choice, governed by 'the comity of nations.' " **Wilson v. Marchington**, 127 F.3d 805, 808 (9th Cir.1997) (**quoting Hilton v. Guyot**, 159 U.S. 113, 163, 16 S.Ct. 139, 40 L.Ed. 95 (1895)). "Comity is 'the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation.' " **Dependable Highway Express, Inc. v. Navigators Ins. Co.**, 498 F.3d 1059, 1067 (9th Cir.2007) (**quoting Hilton**, 159 U.S. at 164, 16 S.Ct. 139). Extension of comity to a foreign judgment is "neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other." **Id**. (internal quotation omitted).

8

>As this court recognized in *Marchington*, " *Hilton* [*v. Guyot* ] provides the guiding principles of comity[:]"
>
>>[W]here there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it was sitting, or fraud in procuring the judgment, or any other special reason why the comity of this nation should not allow it full effect, the merits of the case should not, in an action brought in this country upon the judgment, be tried afresh, as on a new trial or an appeal, upon the mere assertion of the party that the judgment was erroneous in law or in fact.

*Asvesta*,  580 F.3d at 1011.

41.  When comity is at issue concerning another country's resolution of a petition under the Hague Convention, the court properly begins its analysis "with an inclination to accord deference to" the foreign court's adjudication of the Hague petition.  *Diorinou*, 237 F.3d at 145.  However, in determining whether comity should be applied to a particular judgment of a foreign court in the context of a Hague petition, it is proper to examine the merits of the foreign court's ruling to determine if the foreign court followed the mandates of the Hague Convention when resolving the petition in question.  *Asvesta*, 580 F.3d at 1011 - 1021; *Diorinou*, 237 F.3d 145 - 146; *Carrascosa v. McGuire*, 520 F.3d 249, 260 - 263 (3rd Cir. 1008).  If the foreign court deviated significantly from the mandates of the Hague Convention in resolving a relevant Hague petition, or deviated significantly from the general requirements outlined in *Hilton v. Guyot*, an extension of comity to the foreign court's order may not be appropriate.  *Id*.

42.  The proceedings conducted by First Instance Court of the City of Guaymas, State of Sonora, when hearing and determining the Hague petition filed by the petitioner in that court, satisfied the general requirements outlined in *Hilton v. Guyot*.  The

evidence presented to this United States District Court at the hearing in this case on March 10 and 11, 2011, demonstrates that the parties received a full and fair hearing in the court of first instance, that the court of first instance is a court of competent jurisdiction, and the hearing was conducted in a regular fashion.  Both parties appeared at and participated in the hearing before the court of first instance, and both parties were represented by counsel at the hearing.  The evidence in the record indicates that the Mexican system of jurisprudence is a system likely to secure an impartial administration of justice on the petition.  There has been no showing of irregularity or prejudice in that court or in the laws of Mexico, and there has been no showing of fraud in procuring the judgment of the court of first instance.

      43.  The ruling of the court of first instance, as reflected in its order resolving the petitioner's Hague petition, Exhibit 9, applies properly the requirements of the Hague Convention.  The court of first instance was presented with substantial evidence that supports its finding that the petitioner "consented that the minor be transferred until the mother believes it best to return to her country of origin."  Exhibit 9, p. 6. This finding reasonably and properly was based on the terms of the travel authorization executed by the petitioner on July 20, 2007.  Exhibit 9, pp. 5 - 6.

      44.  The court of first instance noted the petitioner's contention that he had withdrawn or revoked his travel authorization.  Exhibit 9, p. 6.  Under the circumstances addressed by the court of first instance, the father's revocation does not substantially undermine the finding of the court of first instance.  Notably, the court of first instance heard testimony and took evidence in a regularly conducted proceeding and was, as a result, in the best position to evaluate all of the relevant evidence, including the petitioner's putative revocation, in making its ultimate determination.

45. Citing Article 13 of the Hauge Convention, the court of first instance noted correctly that a return of the child under the Hague Convention is not required if it has been shown that the parent requesting return of the child gave "prior consent for the retention or trip." Exhibit 9, p. 6. The court had a sufficient evidentiary foundation for its finding that "the first requirement of the Hague Convention under Article 3, was not effectuated, that is, that the custody right in relation to the applicant was not broken, since he consented that the minor travel with the mother." Exhibit 9, p. 6. Ultimately, the court of first instance concluded that it "is not allowing the return of the minor child under the Hague Convention in virtue of Article 13 of the convention which states that: "it is not required to return the minor if there was prior consent for the retention or trip." Exhibit 9, p. 6. "In this case, the applicant consented that the minor be transferred until the mother believes it best to return to her country of origin." Exhibit 9, p. 6. The court of first instance addressed and resolved the petitioner's contention that the respondent had wrongfully removed the child from Argentina and wrongfully retained the child in Mexico.

46. Under the applicable standards outlined above, there is no principled reason for this court not to accord comity and deference to the previous determination of the First Instance Court of the City of Guaymas, State of Sonora, on the Hague petition presented to and resolved by that court. The court of first instance applied the relevant standards of the Hague Convention and had an adequate evidentiary foundation for its determination that the child had not been removed wrongfully from Argentina or retained wrongfully in Mexico. Under these circumstances, the findings and conclusions of the court of first instance are entitled to comity and deference. The Hague petition presented to the court of first instance presented essentially the same issues addressed

to this United States District Court in the Hague petition now pending before this court.

### III.  ORDERS

Based on the preceding findings of fact and conclusions of law, the record in this case, the ***Hague Convention on the Civil Aspects of International Child Abduction***, ***ICARA***, and the law applicable to a determination of whether comity should be accorded to the judicial decrees of a foreign nation,

**IT IS ORDERED** as follows:

1. That the **Petition for Return of child To Petitioner Under the Hague Convention on the Civil Aspects of International Child Abduction and the International Child Abduction Remedies Act** [#1] filed February 3, 2011, is **DENIED**;

2.  That effective forthwith, the physical custody of the child, Guillermina Frania Torres Ceja, born May 25, 2004, **IS RETURNED** to the respondent, Frania Jazmin Ceja Abarca, a/k/a Ania Zmia Abia;

3. That this order is a determination only of the issues presented to this court under the Hague Convention and the ***International Child Abduction Remedies Act*** ("ICARA"), 42 U.S.C. §§ 11601 - 11611;

4.  That this order is not a determination or adjudication of custody, visitation, allocation of parental responsibilities, determination of parenting time, or allocation of decision making responsibility under either the Uniform Child Custody Jurisdiction Enforcement Act, article 13 of title 14, C.R.S., or the Uniform Dissolution of Marriage Act, part 1 of article 10 of title 14, C.R.S. or any law other than the Hague Convention and ICARA;

5. That a copy of this order (either conformed or certified as may be required by law) **SHALL BE SERVED** on all parties in interest, including the District Court of the

City and County of Denver, for consideration in case number 11DR855;

6. That the *Ex Parte* **Warrant, Abduction Prevention Order, and** *Ex Parte* **Temporary Restraining Order [Filed** *Ex Parte***]** [#9] filed February 22, 2011, as amended by subsequent orders docketed as [#14, #17, & #19], is **WITHDRAWN**;

7. That as soon as practicable, the respondent, Frania Jazmin Ceja Abarca, a/k/a Ania Zmia Abia, **SHALL RETRIEVE** the child, Guillermina Frania Torres Ceja, born May 25, 2004, from the custody of Arizona Child Protective Services in Nogales, Arizona;

8. That the Arizona Child Protective Services in Nogales, Arizona is **AUTHORIZED TO RELEASE** the child, Guillermina Frania Torres Ceja, born May 25, 2004, to Frania Jazmin Ceja Abarca, a/k/a Ania Zmia Abia, and to no other person;

9. That the respondent, through counsel, **SHALL PROVIDE** a copy of this order to Arizona Child Protective Services in Nogales, Arizona, specifically to caseworker, Beatriz Valera, and her supervisor, Marie Montenegro, as soon as practicable by any means reasonably calculated to communicate both the fact of entry and the terms and provisions of this order, including, but not limited to, facsimile and/or electronic mail;

10. That any restrictions on viewing documents filed in this case *ex parte*, including [#7, #9, and #13], **ARE LIFTED**, and all documents filed in this case *ex parte* shall be open to public view on the court's CM/ECF system;

11. That the respondent's request for an award of attorney fees, as stated in her response [#31], is **DENIED**;

12. That the respondent's **Motion To Dismiss: Res Judicata** [#32] filed March 10, 2011, is **DENIED** as moot;

13. That **JUDGMENT SHALL ENTER** in favor of the respondent, Frania Jazmin

13

Ceja Abarca, a/k/a Ania Zmia Abia, and against the petitioner, Guillermo Luis Torres Broda;

14.  That the respondent is **AWARDED** her costs, to be taxed by the Clerk of the Court under FED. R. CIV. P. 54(d)(1) and D.C.COLO.LCivR 54.1; and

15.  That this case is **CLOSED**, except that the court retains the jurisdiction necessary to enforce these orders.

Dated March 15, 2011, at Denver, Colorado.

**BY THE COURT:**

*/s/ Bob Blackburn*
Robert E. Blackburn
United States District Judge